**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
**RANDY WALTER,**                                             05-CV-1284 (NG) (RLM)

                **Plaintiff,**

        -against-                                             **OPINION AND ORDER**

**THE CONSOLIDATED EDISON**
**COMPANY OF NEW YORK INC., et al.,**

                **Defendants.**
-----------------------------------------------------x

**GERSHON, United States District Judge:**

      This is an employment discrimination action. The amended complaint ("Complaint") contains eighteen counts asserting violations of a variety of federal and state laws by Con Edison and sixteen individual employees and officers of Con Edison. Plaintiff alleges harassment and termination of employment based on his being white, Jewish, older than other employees, afflicted with cancer and a "whistleblower." Plaintiff seeks compensatory and punitive damages. Defendants Eugene McGrath and Kevin Burke, Chairman and President of Con Edison, respectively, now move to dismiss all claims against them in their individual capacities, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. These defendants do not move to dismiss the claims against them in their capacities as agents of Con Edison.

**FACTS**

    The Complaint contains the following allegations:

    Plaintiff is a white, Jewish male who was hired by defendant Consolidated Edison Company of New York Inc. ("Con Ed") as a janitor on or about May 15, 1978. He was later promoted to the

1

position of Operating Supervisor and worked at the company until June 2003, when he was discharged, at the age of forty-six. Complaint ¶¶ 22, 49, 81, 104. On or about February 6, 2002, plaintiff reported to Richard Bagwell ("Bagwell"), Assistant to the Ombudsman, that defendant employees Anthony Vallone ("Vallone") and Mike Knox ("Knox") falsely accused plaintiff of directing them "to improperly cleanup ducts inside of a manhole." Complaint ¶ 23. Plaintiff also informed Bagwell that Knox had been selling illegal untaxed cigarettes on Con Ed's property. Complaint ¶ 23. On or about July 29, 2002, plaintiff requested of defendant Walter Alvarado ("Alvarado"), Manager of Environmental Operations, that Vallone be transferred to another facility and, in September 2002, when neither Vallone nor Knox had been transferred, plaintiff requested that he himself be transferred because he was concerned about retaliation.[1] Complaint ¶¶ 25, 28, 30. On or about August 12, 2002, plaintiff learned that a Con Ed investigation had revealed that Vallone and Knox both gave false statements and violated the Code of Conduct, but that such conduct was not retaliation against plaintiff for "fairly assigning overtime." Complaint ¶ 26. The investigation did not address the sale of illegal untaxed cigarettes. Complaint ¶ 26.

On or about October 3, 2002, when plaintiff learned "that the union [wa]s unhappy with [Con Ed's] investigation," he met with defendant Independent Monitor, Dierdre Daly ("Daly"), and reminded her of the illegal cigarette sales occurring on Con Ed property. Complaint ¶ 31. A few days later, plaintiff notified Daly "about crews of defendant [Con Ed] improperly cleaning contaminated ducts and its health hazard to the public." Complaint ¶ 32. On or about March 10, 2003, Alvarado convened a meeting with his management team where they blamed plaintiff for the

---

[1] Specifically, plaintiff learned from another mechanic that Vallone and Knox had said to another mechanic, "it is not over yet." Complaint ¶ 27.

2

scrutiny they had been receiving after the investigation. Complaint ¶ 37. In January and March 2003, plaintiff reported to Alvarado that defendant Jake Stevens ("Stevens"), a mechanic, had operated a Con Ed vehicle while his license was suspended. Complaint ¶¶ 35, 39. On or about May 9, 2003, a mechanic warned plaintiff "to watch himself" because Stevens and other defendants, including two whom plaintiff caught sleeping on the job, "were waiting for plaintiff to do anything wrong so they can hook him up." Complaint ¶ 45.

Plaintiff applied for a job as Senior Specialist, and, when he was not selected, he was told it was because "he did not meet the baseline employee performance expectations." Complaint ¶¶ 43, 48. On or about June 23, 2003, plaintiff was terminated for "instructing an employee to falsify a company document (timesheet) and then plaintiff signed it." Complaint ¶ 49. However, "[u]pon information and belief, the same or similar offense was committed by minority employees of defendant [Con Ed, who] were not terminated." Complaint ¶ 49. Plaintiff's termination occurred seventeen months before receiving the required seventy-five points which would have allowed him to maintain his health benefits upon retirement. Complaint ¶ 56. Plaintiff then wrote a letter to defendant Claude Trahan ("Trahan"), Vice President of Human Resources, to begin the appeals process, which "according to defendant [Con Ed] policy . . . should be completed as soon as practicable." Complaint ¶ 50. The process took over nine months. Complaint ¶ 50.

On or about June 30, 2003, plaintiff wrote a letter to defendant Eugene McGrath ("McGrath"), Chairman, President and Executive Officer, alleging age and/or reverse discrimination, problems with Vallone and Knox and the harshness of his penalty compared to that of a younger, African-American employee who also falsified timesheets. In the letter, plaintiff also alleged that Con Ed had intentionally exposed plaintiff to contaminants which caused him to develop

3

cancer, that the transportation department "dumped thousands of gallons of hydraulic oil through holes underground beneath [an old facility]," and that Con Ed had intentionally exposed him to contaminants without protective gear in a van during a steam explosion in Gramercy Park. Complaint ¶ 51.

In February 2004, the Con Ed Office of the Ombudsman 2003 Annual Report acknowledged that falsification of company records was common and that past practices supported the falsification. Complaint ¶ 52. Plaintiff then spoke with the director of "Equal Employment Opportunity" who informed plaintiff that Con Ed would have offered a union position to him in "Transportation" but that defendant John Mucci, Vice President of Transportation and friend of Vallone and Knox, "and others" were concerned about a person with cancer handling motor oils. Complaint ¶ 53. During this conversation, plaintiff claimed that he had been retaliated against because of both his allegations about cigarette sales and the investigation of Vallone and Knox. At this time, he also reported that Alvarado displayed "inappropriate behavior" toward plaintiff and "fail[ed] to take corrective action regarding plaintiff's hostile work environment," that defendant Dave Gedris, Vice President of Electric, was told of plaintiff's concerns with Vallone and Knox but was seek joking with them, and that "upon information and belief . . . Gedris was also purchasing such [illegal untaxed] cigarettes." Complaint ¶ 53.

On or about February 11, 2004, plaintiff again contacted Trahan, Vice President of Human Resources, to request that he reconsider his reinstatement, but never received a response. Complaint ¶ 54.

Plaintiff initially filed a petition *pro se* with the New York State Division of Human Rights ("NYSDHR") on or about July 22, 2003, alleging employment discrimination by agents of Con Ed.

Complaint ¶ 10. On or about July 27, 2004, plaintiff, represented by counsel, requested an adjournment so the firm could become familiar with his case. Complaint ¶ 14. On or about November 19, 2004, plaintiff requested that his NYSDHR file be closed for administrative convenience and requested a right to sue letter from the United States Equal Employment Opportunity Commission. Complaint ¶¶ 16-17. Plaintiff received his right to sue letter on or about December 17, 2004. Complaint ¶ 19.

**DISCUSSION**

Before reaching Federal Rule of Civil Procedure Rule 12(b)(6), the court looks to Rule 8(a)(2), which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Even under the liberal pleading standards, a plaintiff must "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000); *see also Jones v. Ocwen Fed. Bank*, 147 F. Supp. 2d 219 (S.D.N.Y. 2001) (motion to dismiss granted pursuant to Rule 8(a) for failure to allege any specific conduct, facts, or circumstances to support his claims).

In opposition to the motion, plaintiff asserts facts against McGrath and Burke that are not set forth in the Complaint, but also maintains that he has alleged sufficient facts in his Complaint to entitle him to relief.[2] Plaintiff relies specifically on paragraphs 50, 51, 52 and 53 of the Complaint. However, although plaintiff repeatedly recites their names, the Complaint is in fact devoid of allegations against them. The Complaint contains no narrative allegations against Burke

---

[2] Plaintiff's reliance on his own affidavit and defendants' affidavits relating to a discovery dispute is misplaced, as such documents are not properly before the court on a motion to dismiss.

and the only such allegation against McGrath is as follows (¶ 51):

> On or about June 30, 2003, plaintiff writes a letter to defendant EUGENE MC GRAFF [sic]. The letter in sum and substance re-alleges the following: plaintiff is the victim of age and/or reverse discrimination; the problems with defendants ANTHONY VALLONE and MIKE KNOX; the harshness of his penalty in comparison to Operations Supervisor William Binghampton; over the years defendant [Con Ed] intentionally exposed plaintiff to contaminants wherein plaintiff developed Cancer; Transportation has dumped thousands of gallons of hydraulic oil through holes underground beneath the old 40-22 College Point Boulevard facility; defendant [Con Ed] intentionally exposed plaintiff to contaminants in Step Van # 40285 during the Gramercy Park Steam Explosion without protective gear etc.

This single factual allegation in the Complaint against McGrath states that plaintiff wrote him a letter a week after he was terminated on June 23, 2003.[3] However, nothing in this paragraph or in the Complaint alleges any personal or supervisory involvement by McGrath in plaintiff's employment or in the decision to terminate him.

Paragraph 52 of the Complaint references the Ombudsman 2003 Annual Report, stating merely that it "acknowledge[d] falsification of company records was common and even that 'past practices' even supported the falsification." Although this reference in the Complaint mentions nothing about McGrath or Burke, plaintiff contends that it proves that "McGrath had actual knowledge of plaintiff's complaints for reporting environmental violations and discrimination" because "Dierdre Daly both in her capacity as Independent Monitor and Deputy Ombudsman reported all suspected claims of violations of environmental or safety laws, and allegations of retaliation, harassment and/or discrimination directly to the Chairman, Eugene McGrath." This, however, is a mischaracterization of the Report. The Report merely states that the Independent

---

[3]The letter was also sent to Burke, but this is not alleged in the Complaint. A copy of the letter is attached as Exhibit C to Plaintiff's Memorandum of Law.

Monitor "reports directly to the Chairman" and that the Deputy Ombudsman reports "solely to the Ombudsman." Pl. Mem. of Law, Exhibit A at 45, 46.

Paragraph 53 also makes no mention of either defendant, but states in relevant part:

> On or about February 10, 2004, plaintiff received a call on his cellular telephone from Director, Equal Employment Opportunity Lillian Gonzalez, she was returning plaintiff's call to her office. In sum and substance, Director Gonzalez acknowledged Defendant [Con Ed] would have offered a union position to plaintiff in Transportation but Defendant JOHN MUCCI (Friend of Defendants ANTHONY VALLONE and MIKE KNOX. He also handled their misconduct investigation.) And others decided against it because of their concerns of plaintiff handling motor oils.

Although there is no mention of McGrath or Burke in this paragraph and it does not assert any involvement by them in plaintiff's employment or termination, plaintiff now contends that the word "others" refers to these two defendants. Even under the liberal pleading standard, such a vague reference in the Complaint does not satisfy the fair notice requirement of Rule 8(a).

For these reasons, plaintiff has failed, even under the liberal pleading standards, to provide defendants with fair notice of the claims against them. When a claim is dismissed under Rule 8, a plaintiff should ordinarily be given leave to amend the complaint. Plaintiff is granted 30 days leave to amend his Complaint.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted in its entirety with

leave to amend within 30 days.

**SO ORDERED.**

_____/s/_____

**NINA GERSON
United States District Judge**

**Dated: Brooklyn, New York
August 3, 2006**